IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PARISH COLEMAN,                    }
TDCJ-CID NO. 1217400,              }
      Petitioner,          }
v.                                 }          CIVIL ACTION NO. H-07-1673
                                   }
NATHANIEL QUARTERMAN,              }
      Respondent.          }

OPINION ON DISMISSAL

Petitioner Parish Coleman, an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ('TDCJ-CID'), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony conviction for aggravated robbery. (Docket Entries No.1, No.4).  Respondent has filed a motion for summary judgment, seeking dismissal of the petition on grounds that the petition is time-barred and alternatively, that it fails on the merits.  (Docket Entry No.11).  Petitioner has filed a response to the motion. (Docket Entry No.12).  After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted of aggravated robbery in the 400th Judicial District Court of Fort Bend County in cause number 36,670.  *Coleman v. State*, No.14-04-00003-CR, Clerk's Record, page 3.  In an unpublished Memorandum Opinion, the Fourteenth Court of Appeals for the State of Texas ('Fourteenth Court') summarized the facts presented to the jury, as follows:

    Nicholas Deiss, an employee at a Diamond Shamrock convenience store in
    Rosenberg, was robbed by two men at gunpoint.  Both of the assailants wore

masks covering their faces, and only one of the two men was armed.  At trial, two surveillance videotapes were introduced into evidence, allowing the jury to view the crime on video and hear the voice of the assailant holding the gun.  Relying primarily on their familiarity with appellant's voice and mannerisms, three witnesses identified him as the armed man in the videotape.  The jury found appellant guilty of aggravated robbery and, after appellant pleaded true to one enhancement paragraph, the court assessed punishment at 25 years' confinement.

*Coleman v. State*, No.14-04-00003-CR, 2005 WL 851196, *1 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (not designated for publication).

On direct appeal, petitioner claimed that the evidence was legally and factually insufficient to support his conviction because it was biased, successfully impeached, and uncorroborated.  *Id.* at *2.  Petitioner also claimed that the state district court erred in admitting the testimony of two witnesses concerning statements against interest made by accomplice Charles McMillian.  In affirming the judgment of the lower court, the Fourteenth Court found that the evidence was legally and factually sufficient to uphold the conviction and that petitioner had failed to preserve error with respect to the testimony of witnesses Teresa Martin and Alvin Clay.  *Id.* at *2-4.  The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on September 13, 2005.  *Coleman v. Texas*, P.D.R. 0934-05.  Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court.

On November 21, 2006, petitioner sought state habeas relief on the following grounds:

1. He was denied a fair trial because:

   a. There was no evidence to support an aggravated robbery conviction;

   b. He is actually innocent;

   c. The state district court erred in admitting Theresa Martin's testimony regarding the out-of-court statements of accomplice Charles McMillian as an exception to the rule against hearsay;

2

    d.  Pre-trial identification procedures whereby witnesses identified petitioner as one of the robbers in the videotape were impermissibly suggestive;

2.  Petitioner was denied the effective assistance of counsel at trial because his trial counsel failed to:

    a.  Object to in-court voice identification and to file a motion to suppress in-court voice identification testimony on grounds that it was the result of suggestive pre-trial procedures;

    b.  Obtain and present an expert witness on voice identification;

    c.  Object to the testimony of Teresa Martin regarding accomplice Charles McMillian's statements against interest on grounds that such testimony constituted inadmissible hearsay;

    d.  Move for a mistrial on ground that the State did not establish the proper predicate before presenting the testimony of Alvin Clay regarding the statements against interest made by Charles McMillian;

    e.  Request a jury instruction on circumstantial evidence; and,

    f.  Investigate the case properly to produce evidence that would exculpate petitioner, such as producing the man implicated by Charles McMillian at trial, namely, Josh or "Blue";

*Ex parte Coleman*, Application No. 67,039-01, pages 33-42.

        The state district court, sitting as a habeas court made no findings and recommended that habeas relief be denied. *Id.* at 88. On March 28, 2007, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order. *Id.* at cover. Petitioner filed a motion for reconsideration on April 16, 2004, which the Texas Court of Criminal Appeals denied on April 24, 2007. Texas Court website.[1]

        Petitioner filed the pending federal habeas petition on May 10, 2007. (Docket Entry No. 1). He seeks relief on the following grounds:

1.  There is no evidence, other than voice identification, upon which to support his conviction for aggravated robbery;

---

[1] *See* http://www.cca.courts.state.tx.us/opinions/Case.asp?FilingID=250186

    2.   Petitioner is actually innocent of the offense;

    3.   The in-court identification was the result of unnecessarily suggestive pre-trial voice identification procedures;

    4.   He was denied the effective assistance of counsel at trial because trial counsel failed to:

        a.   Object to voice identification;

        b.   Obtain  an expert witness on voice identification;

        c.   Object to the testimony of Teresa Martin on hearsay grounds;

        d.   Move for a mistrial on grounds that the testimony of Alvin Clay was not based upon a proper predicate;

        e.   Ask for a jury instruction on circumstantial evidence; and

        f.   Investigate and produce exculpatory evidence.

(Docket Entry No.1).

Respondent moves for summary judgment on grounds that petitioner's petition is time-barred and petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and that his claims fail on the merits.  (Docket Entry No.11).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake*

*Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

## III. ANALYSIS

## A. ONE-YEAR STATUTE OF LIMITATIONS

Respondent contends that the pending petition is time-barred and that petitioner has stated no grounds upon which this Court may grant equitable relief.  (Docket Entry No.11).

Under the AEDPA, habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)    the date on which the factual predicate of the claim
>         or claims presented could have been discovered
>         through the exercise of due diligence.
>
> (2)    The time during which a properly filed application for State post-
>        conviction or other collateral review with respect to the pertinent
>        judgment or claim is pending shall not be counted toward any
>        period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).  The one-year limitations period became effective on April 24, 1996, and applies to all federal habeas corpus petitions filed on or after that date.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320, 117 (1997)).  Because petitioner's federal petition was filed well after that date, the one-year limitations period applies to her claims.  *Flanagan*, 154 F.3d at 198.

Under the provisions of the AEDPA, petitioner's one-year limitation period began on December 13, 2005, the last day petitioner could have filed a petition for writ of *certiorari* in the United States Supreme Court.  *See* 28 U.S.C. § 2244(d)(1)(A); Sᴜᴘ. Cᴛ. R. 13.1.  That date triggered the one-year limitations period which expired on December 13, 2006.  Petitioner's state habeas application was pending before the Texas Court of Criminal Appeals from November 21, 2006 until March 28, 2007, at which time the Texas Court of Criminal Appeals denied relief.  Petitioner's state application before the Texas Court of Criminal Appeals tolled the limitations period for 127 days.  *See* 28 U.S.C. § 2244(d)(2); *Villegas v. Johnson*, 184 F.3d 467, 473 (5th Cir. 1999) (concluding petition filed in accordance with state's procedural filing requirements tolls one-year limitations period during pendency of petition).  Petitioner's motion for reconsideration, which was pending before the Texas Court of Criminal Appeals until April 24, 2007, tolled the limitations period for twenty-seven days.  *See Emerson v. Johnson*, 243 F.3d 931, 935 (5th Cir. 2001) (holding that AEDPA's statute of limitations is tolled during pendency of motion for

6

reconsideration in the Texas Court of Criminal Appeals); *Lookingbill v. Cockrell*, 293 F.3d 256, 261 (5th Cir. 2002) (holding that when motion for rehearing is properly filed within limitations period, that period is tolled from date of habeas denial, as if the motion for rehearing is a further step in the state habeas process). *See also Hooks v. Quarterman*, 224 Fed. Appx. 352, 353 (5th Cir. 2007) (not designated for publication).  Together, the pendency of petitioner's state habeas application and his motion for reconsideration before the Texas Court of Criminal Appeals tolled limitations in this case until May 16, 2007.  Therefore, the pending petition, filed on May 10, 2007, is timely filed.

Respondent fails to show his entitlement to summary judgment on this ground.

### B. AEDPA

Respondent also moves for summary judgment on grounds that petitioner has failed to meet his burden of proof under the AEDPA and that his claims fail on the merits. (Docket Entry No.11).

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review and a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the

Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in the petition for discretionary review and state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).  Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

8

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.   A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*   To be unreasonable, the state decision must be more than merely incorrect.   *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).   A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.*   Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.   *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts).   Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.   *Id.*   Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.   *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### 1. Sufficiency of the Evidence to Support Conviction

Petitioner contends that the evidence is legally insufficient to support his armed robbery conviction. Petitioner contends that no evidence exists that would connect him to the robbery, except for the voice identification by three lay witnesses. (Docket Entry No.4). Petitioner maintains their testimony was not credible because the witnesses were not experts, two had criminal records, and one had a bad reputation in the community for truthfulness. He further claims that he was exonerated by the testimony of convicted robber Charles Ray McMillian. McMillian testified that petitioner did not commit the robbery but a man named Josh or "Blue" committed the robbery with him. (*Id.*).

A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that the accused committed the essential elements of the crime. *Id.* at 319. The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a

reasonable doubt.  *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).  Under Texas law, voice identification is sufficient in and of itself to prove identity.  *McInturf v. State*, 544 S.W.2d 417, 418-20 (Tex. Crim. App. 1976).

Although complainant Nicholas Deiss, the store employee who was robbed at gunpoint, could not identify petitioner as the armed robber, the Fourteenth Court found the following testimony sufficient to support petitioner's robbery conviction, as follows, in pertinent part:

> At trial, former Kendleton Police Officer Michael Davis testified he had known appellant for six years and, during that time, spoke with appellant almost daily. Davis testified that because of his familiarity with appellant, he was able to recognize appellant's voice, build, and walk, and identified appellant as the man holding the gun in the videotape based on these characteristics. Daryl Lee, an acquaintance of appellant for more than twenty years, testified he was familiar with appellant's voice and that he recognized appellant as the man in the videotape by his actions and his voice.  Teresa Martin also testified that because she had known appellant for more than ten years, she could identify him on the videotape by his voice.   None of these witnesses equivocated in their identification of appellant.

*Coleman v. State*, No.14-04-00003-CR; 2005 WL 851196 at *2.  The Fourteenth Court of Appeals rejected petitioner's sufficiency claim and found the "three witnesses unequivocally identified appellant as one of the two men in the videotape and the jury resolved any alleged inconsistencies in the evidence in favor of the State."  *Id.*  The Texas Court of Criminal Appeals refused petitioner's PDR on the sufficiency issues.

The state appellate courts' legal sufficiency analysis satisfies the *Jackson v. Virginia* standard and is supported by the record.  *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (applying the *Jackson v. Virginia* standard in reviewing the sufficiency of the

evidence to support a conviction).  Accordingly, petitioner has failed to carry his heavy burden to show that the state courts' determination of this issue was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

## 2. Actual Innocence

Petitioner contends that he has been denied due process because the record shows that he is actually innocent of the offense.  (Docket Entries No.1, No.4).  In support of this claim, petitioner relies on the testimony of Charles McMillian, who attested that petitioner did not commit the armed robbery but a man named Josh or "Blue" committed the offense.  (Docket Entry No.4).  Petitioner also relies on the testimony of his fiancée, who attested that he was with her at the time of the robbery.  (*Id.*).

A claim of actual innocence is not an independently cognizable federal habeas claim.  *Dowthitt v. Johnson*, 230 F.3d 733, 741-42 (5th Cir. 2000).  In *Herrera v. Collins*, the Supreme Court assumed, for the sake of argument, that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."  506 U.S. 390, 417 (1993).  The Supreme Court, however, has declined to resolve whether such stand-alone claims of actual innocence are in fact possible.  *House v. Bell*, 547 U.S. 518, 555 (2006).  The Fifth Circuit has not read *Herrera* as allowing such claims.  *See Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006); *Dowthitt*, 230 F.3d at 741-42.  Because petitioner was not convicted of a capital offense and has not asserted actual innocence as a

'gateway' to obtain review of an otherwise barred claim, his assertion of actual innocence is not cognizable and therefore, is subject to dismissal.

### 3. Pre-trial Identification Procedures

Petitioner next contends that he was denied a fair trial because the in-court voice identification testimony was the result of a pre-trial voice identification procedure that was unnecessarily suggestive and conducive to irreparable mistaken identity.  (Docket Entry No.4). Petitioner claims that before viewing the tape, Rosenberg police officers told witnesses Lee, Martin, and Davis that the men in the videotape might be Charles McMillian and petitioner. (*Id*.).  The state habeas court did not enter findings on this claim and the Texas Court of Criminal Appeals denied it without written order.  *Ex parte Coleman*, Application No.67,039-01 at cover.

The record does not support petitioner's factual allegation that the witnesses were told before viewing the tape the names of the armed robbers.  Michael Davis testified that in July, 2002, he was employed as a police officer with the Kendleton Police Department.  *Coleman v. State*, No.14-04-00003-CR, Reporter's Record, Volume 3, page 10.  He was approached by officers from the Rosenberg Police Department to see if he could identify persons who committed a robbery in Rosenberg.  *Id*. at 10-11.  The officers told him that they had some tapes. *Id*. at 30.  The officers also told them they had a video that they wanted him to see.  *Id*. at 41.  He viewed the videotape of the robbery on July 16, days after the robbery.  *Id*. at 29.  As they watched the video, the officer asked Davis, "Does this look familiar?  Do you know any of the people in this video?"  *Id*. at 41.  He replied, "Yes, sir, I do."  *Id*.  He assisted with their investigation by identifying petitioner as one of the robbers in the store videotape.  *Id*. at 11, 14, 30.

Darryl Lee testified that he did not see the videotapes with a police officer at the Rosenberg Police Department. *Id*. at 55.  He viewed the tape in the district attorney's office. *Id*. Lee reluctantly admitted that he had called Crime Stoppers after viewing the tape on a local television station. *Id* at 65, 69.  Lee also had a conversation with a police officer about the tape. *Id*. at 75.  After the conversation with the police officer, Lee identified petitioner as the armed robber by his voice. *Id*. at 76.

Teresa Martin testified that she had first seen the video on a television news show on the day McMillian was arrested. *Id*. at 97.  She recognized McMillian's body and petitioner's voice. *Id*. at 98.  Thereafter, the police came to her house. *Id*. at 87, 93.  She talked with a detective about the videotape. *Id*. at 94.  She then went to the police department where she viewed the videotape more than five times. *Id*. at 97, 99.  Martin attested that the first time she viewed the tape, the police asked if she could recognize the person in the tape. *Id*. at 99.  Martin identified petitioner by his voice and build and McMillian by his build and walk. *Id*.  She also gave a statement to police regarding her conversation with McMillian after she viewed the videotape on television. *Id*. at 106.

The record does not show that police used suggestive pre-trial procedures to identify petitioner and petitioner does not refer the Court to any evidence in the record that would support his factual allegations of the same; accordingly, his claim fails for want of factual support.

## 4. Ineffective Assistance of Trial Counsel

Petitioner next contends that he was denied the effective assistance of counsel at trial.  (Docket Entries No.1, No.4).  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend.

VI.   A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding

15

fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§2254(d)(1).

### a. Failure to Object

Petitioner contends that trial counsel's performance was constitutionally ineffective because he failed to object to in-court voice identification testimony and because he failed to file a motion to suppress such testimony on the ground that pre-trial identification procedures were unnecessarily suggestive.  (Docket Entry No.4).  Petitioner has not established, and the record does not show, that the pre-trial identification procedures were unnecessarily suggestive and prejudicial.  Moreover, petitioner states no grounds upon which his trial counsel could have objected to the testimony of witnesses Davis, Lee, and Martin regarding their identification of petitioner as one of the two robbers.  The Texas Rules of Evidence provide for voice identification of a defendant "by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker." TEX. R. EVID. 901(b)(5).  Furthermore, identification testimony is constitutionally admissible so long as it is reliable.  *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  "Counsel can both cross-examine the identification

16

witnesses and argue in summation as to factors casting doubts as to the accuracy of the identification." *Id.* at 113 n. 14 (quoting *Clemons v. United States*, 408 F.2d 1230, 1251 (D.C.Cir.1968) (concurring opinion)).  Petitioner fails to show that the identification testimony in this case was unreliable or that his trial counsel did not vigorously attempt to discredit such testimony through his cross-examination of the three witnesses.

      Petitioner also contends that trial counsel was ineffective because he failed to object to the testimony of Teresa Martin.   Martin testified that convicted robber Charles McMillian made statements to her before he was arrested that implicated petitioner as the other robber in this case.  Petitioner contends the statements were inadmissible hearsay.  Petitioner complains that the state appellate court found that his trial counsel objected to such testimony on relevance grounds and therefore, waived any objection to hearsay.  (Docket Entry No.4).

      The record reflects that petitioner's attorney Gordon White ("White") lodged many hearsay objections outside the jury's presence to Martin's testimony regarding McMillian's statements.[2]  *Coleman v. State*, No. 14-04-00003-CR, Reporter's Record, Volume 3 at 101-112.

---

[2]  The record shows that the prosecutor asked Martin if she had had any conversations with McMillian about the case, to which attorney White objected as hearsay, with no known exception.  *Coleman v. State*, No. 14-04-00003-CR, Reporter's Record, Volume 3 at 101.  The state district judge overruled the objection.  Martin then testified that she had a conversation with McMillian on the day he was arrested.  *Id.*  Attorney White objected to the line of questioning as hearsay, which the state district judge sustained.  *Id.*  After more testimony about where the conversation took place and the why Martin went to see McMillian, Attorney White objected a third time on hearsay grounds.  *Id.* at 101-02.  The state district judge sustained the objection.  *Id.* at 102.

Outside the jury's presence, the prosecutor and Attorney White debated the admissibility of Martin's testimony regarding McMillian's statements.  *Id.* at 103.  Martin testified outside the jury's presence that after she saw the video on the news program, she asked McMillian if he saw the program.  He asked her what she saw and she told him.  He said, "You seen us for real?"  *Id.*  White objected as leading; the judge sustained the objection.  The prosecutor asked if she recalled him saying, "You seen us for real?  Who, me and 'P'?"  *Id.* at 105.  After much more discussion about Martin's statement to police, the prosecutor argued that her statements should be admitted as a hearsay exception as a statement against interest.  *Id.* at 110.  White objected that the statements were not clearly against interest and asked the judge to perform an analysis of the statements as to reliability and trustworthiness.  *Id.*  The judge then overruled the hearsay objection.  *Id.* at 111.  White objected again and requested additional analysis, which the judge overruled.  *Id.* at 112.  When Martin testified to the same before the jury, Attorney White obtained a running objection to the testimony.  *Id.* at 113.  White objected when the prosecutor used Martin's statement to

Even if, as the Fourteenth Court found, White failed to object on hearsay grounds to Martin's testimony before the jury, petitioner cannot show that he was prejudiced by such omission. Convicted robber Charles McMillian testified as a defense witness and refuted Martin's testimony. McMillian further attested that petitioner was not the armed robber. *Id.*, Volume 4 at 13-15.

### b. Failure to Obtain Expert Witness

Petitioner next complains that his trial counsel failed to obtain and present an expert witness on voice identification. (Docket Entry No.4). Petitioner maintains that had counsel employed such expert, the expert would have testified that the voice on the videotape was not petitioner's voice. (*Id.*).

Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified to are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). Further, "the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Under Fifth Circuit precedent, counsel's failure to call witnesses will not constitute ineffective assistance of counsel "unless the habeas petitioner demonstrates prejudice therefrom." *Id.* To demonstrate *Strickland* prejudice, petitioner must show not only that this testimony would have been favorable, but also that the witness would have testified at trial. *Id.*

---

police to refresh her memory. *Id*. at 114-15. When the prosecutor asked Martin if she could tell the jury what additional conversations she had with McMillian after she told him she saw the tape, White objected that "there's no additional reliability as to what additional statements this witness may talk about." *Id*. at 115-16. The state district judge overruled the objection. *Id*. at 116. Martin testified to her conversation with McMillian. *Id*. When the prosecutor asked her to state to whom she was referring when she said, "I saw y'all on tape," Attorney White objected on grounds that it was not relevant and outside the purpose of what the witness was testifying about. *Id*. The objection was overruled. *Id*. White continued to object to the prosecutor's questions regarding the identity of "P." *Id*. at 117-118. Each objection was overruled. *Id*.

Petitioner has not demonstrated, by affidavit or other means, that there was an expert willing to testify or that the substance of that testimony would have been favorable. Moreover, Attorney White tested the reliability of the voice identification and the possibility of misidentification through his extensive cross-examination of the State's witnesses.  *Coleman v. State*, No.14-04-00003-CR, Reporter's Record, Volume 3, pages 28-38, 40-48, 70, 76-79, 93, 98-100.  Attorney White also presented two defense witnesses to show the unreliability of such voice identification.  Reginald Robinson, who was a sergeant with the Kendleton Police Department in July, 2002, testified that he viewed the videotapes of the robbery on several occasions and could not positively identify petitioner as the armed robber by his voice; although he believed the voice was petitioner's.  *Id*. at 170-71, 176.  Rosenberg Police Officer Randy Weisheimer conceded that no fingerprints were found at the scene and indicated that he was unaware of any means to test voice identification.  *Id*. at 179-81.  Without more, petitioner cannot show that calling an expert witness on voice identification would have made any difference in the result of the trial.

### c. Failure to Move for Mistrial

Petitioner contends that his trial counsel was ineffective because he failed to move for a mistrial during the rebuttal phase of trial after the state district court granted White's objection to the testimony of Alvin Clay and instructed the jury to consider Clay's testimony solely as impeachment of McMillian's testimony. (Docket Entry No.4).  Petitioner contends Clay's testimony was inadmissible as impeachment testimony because the State failed to lay the proper predicate.  (*Id*.).

Under the Texas rules, a party may impeach a witness with evidence of a prior inconsistent statement if the party first presents the witness with the existence of the statement,

the details and circumstances surrounding the statement, and gives the witness the opportunity to explain or deny the statement. TEX. R. EVID. 613(a); *Madry v. State*, 200 S.W.3d 766, 770 (Tex. App. Houston [14th Dist.]. 2006, pet. ref'd) (noting that before impeachment evidence is introduced, the State must confront the witness with the statement, tell him the contents of the statement and the time, place, and person to whom it allegedly was made).

During the State's case-in-chief, Alvin Clay testified outside the jury's presence that he had shared a cell with Charles McMillian and that McMillian told him that he and petitioner had committed several specific robberies. *Coleman v. State*, No.14-04-00003-CR, Reporter's Record, Volume 3, pages 128-130. The State argued that McMillian's statements were admissible as an exception to hearsay pursuant to Rule 803.24 of the Texas Rules of Evidence. *Id.* at 142. White objected and the state district court found the statements inadmissible and sustained his objection,. *Id.*

During the defense's case, newly convicted McMillian testified that petitioner did not rob the convenience store with him; he identified a man named Josh or "Blue" as the armed robber in the store with him. *Id.*, Volume 4, page 14. When questioned by the State, McMillian acknowledged that he had shared a cell for about two weeks with Alvin Clay, but testified that he did not talk to Clay about the case. *Id.* at 31. He testified that he talked to Clay about other things until Clay was moved out of the cell. *Id.* at 32. McMillian admitted that he told Clay that he was in jail for robbery but, when questioned, he attested that he had told Clay that he did not commit the crime. *Id.* at 33.

On rebuttal, Clay testified that he and McMillian shared a cell for two to three weeks and during that time, McMillian told him that he, petitioner, and a sister had been involved in the robbery. *Id.* at 89-90. At a bench conference, White noted that he had already

objected to this testimony and that the Court had excluded it.  *Id*. at 90.  He questioned whether the State was offering it for the purpose of impeaching McMillian's testimony and requested a limiting instruction regarding such testimony.  *Id*. at 90-91.  Clay continued to testify about the robberies that McMillian had told him about.  *Id*. at 91.  White requested a running objection to Clay's testimony, which the Court granted.  *Id*.  When Clay testified that McMillian mentioned two robberies, the Court asked the State to narrow the questioning to the robbery at issue; Clay indicated that McMillian discussed all the robberies they had allegedly committed.  *Id*. at 92.  The jury was removed and the Court questioned Clay.  *Id*. at 92-93.  As the jury was brought back to the courtroom, White discussed with the Court whether to seek an instruction to disregard Clay's previous testimony.  White declined to request such instruction for fear of calling more attention to such testimony.  *Id*. at 93.  Clay resumed his testimony and stated that McMillian told him that he and petitioner were going to tell police that they had been at a friend's house the night of the armed robbery.  *Id*. at 94.  After cross-examination, White approached the bench and again requested a limiting instruction.  *Id*. at 97-98.  The Court then read a limiting instruction to the jury regarding Clay's testimony.  *Id*. at 98-99.

Arguably, the record shows the State met the Rule 613(a) predicate and therefore, Clay's rebuttal testimony was admissible for impeachment purposes.  McMillian testified that he was aware of his conversations with Alvin Clay, the content of such conversations, and when and where such conversations took place.  Furthermore, McMillian firmly denied that he told Clay that he committed the robbery.

Moreover, the record, does not affirmatively show that Attorney White objected to the admissibility of Clay's testimony on the ground that the State failed to establish the proper predicate under Rule 613(a), perhaps because White thought such testimony was admissible for

21

impeachment purposes.   Instead, White requested a limiting instruction.   Under Texas law, testimony that is admitted solely for impeachment is without probative value and cannot be considered as substantive evidence.   *Goodman v. State*, 665 S.W.2d 788, 792 n.2 (Tex. Crim. App. 1984).   When testimony is offered and admitted for impeachment purposes only, it should be limited in the court's charge.   *Adams v. State*, 862 S.W.2d 139, 148 (Tex. App.—San Antonio 1993, pet. ref'd).

The Fourteenth Court of Appeals, however, reviewed White's request for a limiting instruction and his request for a running objection and found that "assuming that either of these objections is sufficient to apprise the court of appellant's 613(a) argument, appellant did not receive an adverse ruling on either objection. . . . Because the court sustained both objections, nothing is preserved for review. . . . Appellant received the relief he requested a limiting instruction on his first objection to McMillian's testimony and requested no relief after the trial court sustained his running objection." *Coleman*, No.14-04-00003-CR, 2005 WL 851196 at *4 (citations omitted).

In either case, petitioner fails to show that he was prejudiced by Attorney's White failure to move for a mistrial upon the admission of Clay's testimony in light of other evidence evincing petitioner's guilt.

### d. Failure to Seek Jury Instruction

Next, petitioner claims that his trial counsel was ineffective because he failed to request a jury instruction on circumstantial evidence.   (Docket Entry No.4).   Over twenty years ago, the Texas Court of Criminal Appeals held that a jury instruction on circumstantial evidence was improper.   *Hankins v. State*, 646 S.W.2d 191, 197 (Tex. Crim. App. 1983).   Therefore,

petitioner can show neither deficient performance nor prejudice by counsel's failure to request the same.

### e. Failure to Investigate and Produce Exculpatory Evidence

Petitioner contends that trial counsel White rendered constitutionally ineffective assistance of counsel by his failure to investigate the case properly and to produce exculpatory evidence such as the purported accomplice Josh or "Blue." (Docket Entry No.4).

Counsel "has a duty to make a reasonable investigation of the defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In particular, what investigation decisions are reasonable depends critically on such information." *Boyd v. Johnson*, 167 F.3d 907, 910 (5th Cir. 1999) (quoting *Strickland*, 466 U.S. at 688). "Defense counsel is not required 'to investigate everyone whose name happens to be mentioned by the defendant." *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). To determine the reasonableness of counsel's decision to limit the scope of his investigation under prevailing professional norms, the Court analyzes such conduct as follows:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, at 690-91. Moreover, as with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an

actual and substantial disadvantage to the course of his defense." *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983).

The scope of a defense counsel's pretrial investigation necessarily follows from the decision as to what the theory of defense will be. *Soffar v. Dretke*, 368 F.3d 441, 473 (5th Cir. 2004), *amended on rehearing in part on other grounds*, 391 F.3d 703 (5th Cir. 2004). In this case, the only issue at trial was the identity of the armed robber. The record here affirmatively shows that Attorney White investigated and presented two witnesses who testified to petitioner's alibi that on the night of the robbery, petitioner was with his fiancée. *Coleman v. State*, 14-04-00003-CR, Reporter's Record, Volume 4, pages 70-83. He also presented convicted robber Charles McMillian as a witness, who attested that petitioner did not commit the robbery. *Id*. at 14. Petitioner states no facts to show that Attorney White did not review the State's file or attempt to locate the alleged accomplice Josh or "Blue." Without more, petitioner fails to show that Attorney White's investigation was constitutionally deficient or that he was prejudiced as a result of such investigation.

### f. Disbarment

Petitioner notes that his trial counsel has been disbarred and may have been convicted of a criminal offense. (Docket Entry No.4). State records show that Attorney White was disbarred in May, 2006, years after he ceased to represent petitioner. <u>Texas Lawyer</u>, Vol. 22, No.32, Case Summaries—Discipline (October 6, 2006). Such disbarment does not compel a finding that Attorney White was ineffective in this case. The record does not demonstrate White's inability to properly represent petitioner.

Based on the foregoing, the Court finds that petitioner has failed to show his entitlement to federal habeas relief on his claims that trial counsel rendered constitutionally

ineffective assistance of counsel.  Accordingly, respondent is entitled to summary judgment on this ground.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).   Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).   On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding and appellate courts, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.11) is GRANTED.
2. Petitioner's petition for federal habeas relief is DENIED.
3. A certificate of appealability is DENIED.
4. This habeas action is DISMISSED with prejudice.
5. All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 21st day of May, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

26